UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED
AUG 2 2 2005


```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                          *
CASEY L. McKINNEY,                        *       CIV. 03-4181
                                          *
          Plaintiff,                      *
                                          *
   vs.                                    *       MEMORANDUM OPINION
                                          *       AND ORDER
ROBERT KEUMPER; DOUGLAS WEBER;            *
DARYL SLYKHUIS; OWEN SPURRELL;            *
ROBERT RAE; TROY PONTO;                   *
PATRICK DeYONG; J.P. SYVERSON;            *
BRIAN LEE; D. WALTER; all in their        *
individual and official capacities,       *
                                          *
          Defendants.                     *
                                          *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

Defendants filed a Motion for Summary Judgment, Doc. 63. Plaintiff requested and received an extension of time to respond to the motion. The most recent deadline for responding to the motion expired on May 2, 2005 and Plaintiff has not submitted a response to the motion. (Order, Doc. 79.) The motion will be decided based upon the written record. For the reasons set forth below, summary judgment will be entered in favor of the Defendants.

## BACKGROUND

Plaintiff is an inmate in the South Dakota State Penitentiary ("SDSP"). He brought this action pursuant to 42 U.S.C. § 1983, claiming that various constitutional rights have been violated by the Defendants who are officials employed by the SDSP. Plaintiff alleges Defendants transferred him to a three-man cell and an upper bunk, despite a medical order for a two-man cell and a lower bunk. Plaintiff further alleges Defendants refused to comply with medical orders for athletic shoes,

all in violation of the Eighth Amendment prohibition against cruel and unusual punishment.[1] Plaintiff further alleges his legal papers were taken in violation of the First Amendment guarantee of access to the courts. Another claim regarding his athletic shoes is that Plaintiff alleges Defendants have denied a medical examination by Dr. Regier to renew his medical order for his athletic shoes. He also alleges the Defendants have retaliated against him based upon the above conduct. The final claim is that the Defendants have denied him access to the courts by denying adequate legal assistance.

## DISCUSSION

In considering a motion for summary judgment, the Court asks the question whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (quoting Fed.R.Civ.P. 56(e)). Simply creating a factual dispute cannot defeat a motion for summary judgment; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit. *See, e.g., Ghane v. West*, 148 F.3d 979, 981 (8th Cir. 1998). "A plaintiff's verified Amended Complaint is the equivalent of an affidavit for purposes of summary judgment, and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint." *Roberson v. Hayti*

---

[1] Magistrate Judge Simko granted Plaintiff's Motion to Amend his complaint on June 15, 2004 and directed Plaintiff to file his amended complaint on or before July 19, 2004. (Order, Doc. 54.) Plaintiff failed to file his amended complaint as directed, but the Amended Complaint attached to his motion was signed by Plaintiff. The Court has compared the claims in the original complaint with the Amended Complaint attached to the Motion to Amend, Doc. 47, and does not find any changes to the original complaint that would alter the Court's decision on the pending summary judgment motion. In light of Magistrate Judge Simko's Order granting the Motion to Amend, and the signed Amended Complaint attached to the motion, the Court will consider the Amended Complaint filed on the date of Magistrate Judge Simko's Order. Defendants will not be prejudiced by this action because the claims in both complaints are nearly identical and the Court will grant summary judgment in favor of Defendants on the Amended Complaint.

2

*Police Dep't*, 241 F.3d 992, 994-95 (8th Cir. 2001) (citations omitted). If the allegations in the verified complaint consist of nothing more than conclusory allegations, however, they are insufficient to overcome a summary judgment motion. *See Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999).

I.  **Exhaustion of Administrative Remedies**

42 U.S.C. § 1997e(a) provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Eighth Circuit has characterized the exhaustion requirement as a non-jurisdictional affirmative defense, which may be waived by the defendants. *See Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001).

The prisoner must exhaust his administrative remedies even if the precise relief he seeks in his § 1983 lawsuit is not available through the prison grievance system. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). Also, although § 1997e(a) refers to "prison conditions," the United States Supreme Court has interpreted that phrase to mean "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The relevant time frame to make the exhaustion determination is the time of filing. *See Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). In other words, "in considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred. If exhaustion was not completed at the time of filing, dismissal is mandatory." *Id.*

The purpose of the exhaustion requirement is to afford corrections officials the opportunity to address inmate complaints internally before they are litigated. "In some instances, corrective

3

action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.*

Defendants assert that Plaintiff has not exhausted his administrative remedies as to his claims that his transfer to a three-man cell was retaliatory, that his legal materials were confiscated in retaliation for constitutionally protected activity, or that he had been denied access to the courts. Chad Straatmeyer, a case manager at the SDSP, submitted an affidavit attaching all of Plaintiff's informal resolution requests, requests for administrative remedy and responses to requests for administrative remedy from the beginning of his incarceration through February 2004. (Doc. 69.) This lawsuit was filed on July 22, 2003. Straatmeyer also attached a copy of the inmate living guide revised September 2001, which was in effect until April 2003. (Doc. 69, Ex. B.) Plaintiff's signed receipt acknowledging receipt of the inmate living guide on July 29, 1999, is attached to Straatmeyer's Affidavit, along with an intake for acknowledging his understanding of the inmate grievance procedure. (Doc. 69, Exs. C, D, E.)

Plaintiff did not respond to the motion to provide evidence of exhaustion of administrative remedies. In his verified Amended Complaint Plaintiff summarily stated that he exhausted all of his administrative remedies for all the claims. *See Williams v. Adams*, 935 F.2d 960, 961 (8th Cir. 1991) (recognizing that "[a] verified complaint is the equivalent of an affidavit for summary-judgment purposes ...."). The Court has reviewed the grievances submitted by Plaintiff, however, and does not find any genuine issue of material fact that Plaintiff exhausted his administrative remedies as to the following claims: 1) retaliation for moving him to a three-man cell ; 2) retaliation by not allowing Plaintiff to sleep on a lower bunk; 3) access to the courts and retaliation by taking his legal papers; 4) access to the courts by denying him adequate legal assistance. Thus, these claims will be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(a).

4

## II. Medical Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. A prisoner's allegation of inadequate medical attention was recognized as a potentially viable claim for a violation of the prohibition against cruel and unusual punishment, via a § 1983 cause of action, in *Estelle v. Gamble*, 429 U.S. 97 (1976). To state a cause of action, the prisoner must sufficiently allege "deliberate indifference" to a prisoner's "serious illness or injury." *Id.* at 105. "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* To prevail on a claim of deliberate indifference, a plaintiff must prove: (1) he suffered objectively serious medical needs and; (2) the prison officials actually knew but deliberately disregarded those needs. *See Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

### A. Three-man cell

Plaintiff contends that Defendants Kuemper and Ponto ignored a medical order requiring Plaintiff to be housed in a two-man cell by transferring Plaintiff to a three-man cell. Ponto submitted an affidavit stating that on February 12, 2002, he assigned Plaintiff to a triple occupancy cell. Ponto states that Kuemper was not involved in this transfer decision. On April 4, 2002 Ponto received a medical order from Dr. Regier providing that Plaintiff should be in a two-man cell and Ponto transferred Plaintiff to a two-man cell the same day. The cell assignment sheet shows that Plaintiff was transferred on April 4, 2002. (Doc. 66, Ex. B.) Plaintiff has not submitted any evidence to show that the cell he was transferred to on April 4, 2002, was not a two-man cell. Thus, there is no genuine issue of material fact for trial on Plaintiff's claim that being housed in a three-man cell violated Plaintiff's medical orders.

### B. Bottom bunk

In Plaintiff's Third Claim, he contends that Defendant Ponto violated a medical order that Plaintiff be assigned to a bottom bunk. Having reviewed the medical records, there are several medical orders requiring Plaintiff to be assigned a bottom bunk. Ponto states in his affidavit that he

5

was not aware of the bottom-bunk medical order and that, in any event, he did not personally assign Plaintiff to a top bunk in any of his housing assignments. Even assuming there is a genuine issue of material fact regarding whether Ponto knew of the bottom-bunk medical order or whether he assigned Plaintiff to a top bunk, Plaintiff has not alleged that Ponto is continuing to assign Plaintiff to a top bunk and he has not alleged that he suffered any specific injury as a result of not being assigned to a bottom bunk.

Viewing the evidence in the record in the light most favorable to Plaintiff, there is no genuine issue of material fact that failing to assign Plaintiff to a bottom bunk caused Plaintiff any injury. Plaintiff submitted a declaration stating that while assigned to a top bunk "although not in constat pain, I suffered pain for periods of hours each and every day because medical orders were not followed by my keepers." (Doc. 48, ¶ 21.) This type of an subjective pain from a neurological-type injury, however, is sophisticated and the Eighth Circuit has explained that "[w]hen an injury is sophisticated, proof of causation generally must be established by expert testimony." *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002) (citing *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1210 (8th Cir. 2000) ("'[A] causal connection between an event and an injury may be inferred in cases in which a visible injury or a sudden onset of an injury occurs. However, when the injury is a 'sophisticated' one, i.e., requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within the realm of lay understanding and must be established through expert testimony.'") (citations omitted)). Plaintiff has not submitted expert testimony to establish that failure to assign him to a bottom bunk caused him an injury.

Plaintiff's claim may be analyzed as a claim for delay in medical treatment, i.e., delay in implementing a medical order. "'An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.'" *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (citation omitted). The Amended Complaint does not contain a description of any detrimental effect he suffered as a result of not being assigned to a bottom bunk. His declaration

6

stated that he suffered pain as a result of being assigned to a top bunk. But Plaintiff did not submit any medical evidence to establish that Plaintiff suffered any detrimental effect of delay in implementing the medical order requiring that Plaintiff be assigned to a bottom bunk. Accordingly, Defendant Ponto is entitled to summary judgment on Plaintiff's Third Claim in the Amended Complaint.

### C. Shoes

The Fifth and Sixth Claims in the Amended Complaint contain allegations that Plaintiff has not received adequate medical care because his athletic shoes were taken from him in violation of a medical order. There is a medical order dated April 4, 2002, which states, "Keep own shoes." (Doc. 65, Ex. A, Part 1, bates no. 451.) The report dictated by Dr. Regier dated April 5, 2002, does not mention Plaintiff keeping his shoes or any medical reason for Plaintiff needing athletic shoes. (*Id.* at bates no. 544.) A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (quotation marks and citation omitted). Although Dr. Regier ordered that Plaintiff be allowed to keep his own shoes, there is no diagnosis of a medical condition that necessitated Plaintiff keeping his shoes. The Court has examined the entire medical file submitted by Defendants and does not find any reference to Plaintiff complaining about pain related to the type of shoes he wore or any medical diagnosis that would require Plaintiff to wear athletic shoes. Plaintiff did submit a request slip to the SDSP health service for a renewal of the medical order for him to keep his own shoes, but he did not complain about any injury or pain necessitating such a medical order. (Doc. 65, Ex. A., Part 2 at bates no. 492.) Thus, the Court does not find there is a genuine issue of material fact that the confiscation of Plaintiff's athletic shoes resulted in a denial of adequate medical care.

Moreover, Defendants interpreted the medical order as expiring on October 4, 2002. (Doc. 65, Ex. A, Part 1, bates no 451.) Although that interpretation is debatable given the manner in which the medical order is written, Plaintiff has not pointed to evidence to show that he suffered any injury

as a result of not being allowed to keep his athletic shoes. The Amended Complaint does not contain a description of an injury that Plaintiff suffered as a result of his athletic shoes being taken away from him. In addition, the medical records following the confiscation of Plaintiff's shoes do not contain any references to complaints by Plaintiff to the SDSP medical staff that he was being injured by not wearing his own athletic shoes. There is no genuine issue of material fact remaining for trial on this claim in the absence of expert testimony to establish a causal link between the taking of Plaintiff's athletic shoes and any injury suffered by Plaintiff. *See Robinson*, 292 F.3d at 564.

An additional claim regarding his shoes, contained in the Seventh Claim of the Amended Complaint, is that the Defendants are liable for denying him a medical examination by Dr. Regier to obtain a renewal of the April 4, 2002, medical order providing that Plaintiff could "Keep own shoes." There is nothing in the record to demonstrate that Defendants were involved with any decision to not allow Plaintiff to be examined by Dr. Regier. Also, in the medical records regarding Plaintiff's examination by Dr. Regier on July 24, 2003, which is the first examination Plaintiff had after his shoes were confiscated, there is no mention of a request for renewal of the medical order for Plaintiff to keep his own shoes. (Doc. 65, Ex. A, Part 3, bates no. 554.) In addition, the medical records for Plaintiff's examination by Dr. Shaeffer on July 2, 2003 and physician's assistant Zike's examination on November 12, 2003, contain no reference to an injury or pain Plaintiff complained of as a result of not having his athletic shoes. (*Id.* at bates nos. 553, 555.)

### III. Retaliation

The remaining claims of retaliation that are not subject to dismissal for failure to exhaust administrative remedies are that Plaintiff's athletic shoes were taken away from him and that he is being denied a medical examination by Dr. Regier to obtain a renewal of his medical order for athletic shoes.

"Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256

8

F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)); *see Scher v. Engelke*, 943 F.2d 921, 925 (8th Cir. 1991) (recognizing that "[t]he law making retaliation for the exercise of a constitutional right actionable under § 1983 has been established for some time and an objectively reasonable official could not fail to know of it."). The Defendants contend that Plaintiff has failed to allege he was engaged in constitutionally protected activity for which the Defendants allegedly retaliated against him.

The only action allegedly taken by Plaintiff that he alleges forms the basis for his retaliation claim regarding the taking of his athletic shoes is that he witnessed Defendant Robert Kuemper physically assault another inmate. In the Sixth Claim in the Amended Complaint, Plaintiff alleges that Defendants Kuemper, Slykhuis, Spurrell, Rae and Weber took Plaintiff's "medically prescribed athletic shoes in defiance of a medical order therefor, in retaliation for plaintiff's claims against KUEMPER ...." (Amended Complaint ¶ 24.) In a separate declaration filed by Plaintiff, Doc. 48, Plaintiff stated that on February 15, 2002, he observed Defendant Kuemper kick an inmate in the head, shoulders and back while the inmate was on the floor handcuffed and shackled. (Doc. 48, ¶ 9.) The action taken by Plaintiff in response to observing Defendant Kuemper's behavior was to tell "several inmates and staff what [he] had seen." (Doc. 48, ¶ 10.) Plaintiff could potentially argue that he was retaliated against for exercising his First Amendment right of freedom of speech in telling others what he observed. Thus, the Court will address the merits of the retaliation claim for the confiscation of Plaintiff's athletic shoes.

If an inmate has violated an actual prison rule, he cannot prevail on a claim that the alleged retaliatory conduct is actionable under 42 U.S.C. § 1983. *See Cowans v. Warren*, 150 F.3d 910, 912 (8th Cir. 1998) (inmate who violated prison rule cannot state retaliation claim for discipline imposed). The retaliatory conduct at issue is the taking of Plaintiff's athletic shoes. It is debatable whether the medical order allowing Plaintiff to "Keep own shoes" expired on October 4, 2002. (Doc. 65, Part 1, bates no. 451.) The shoes were taken from Plaintiff on January 23, 2003. (Doc. 71, Ex. A, bates no. 273.) In a Request for Administrative Remedy, Plaintiff asserted that the

9

medical order for athletic shoes did not expire. (Doc. 71, Ex. A, bates no. 275.) Despite this reference to his medical order not being expired, in his sworn Amended Complaint Plaintiff apparently concedes that the medical order for his athletic shoes expired because he alleges a denial of a medical examination by Dr. Regier to obtain "a required renewal of [the] medical order for [Plaintiff's] athletic shoes." Plaintiff did submit a request slip to the SDSP health service for a renewal of the medical order for him to keep his own shoes. (Doc. 65, Ex. A., Part 2 at bates no. 492.) There is no evidence in the record to refute Defendants' assertion that they interpreted Plaintiff's medical order for his own shoes as expiring on October 4, 2002. (Doc. 71, Ex. A at bates no. 276.) The Court evaluates the validity of a disciplinary determination against a prisoner under the "some evidence" standard. *Goff v. Burton*, 7 F.3d 734, 739 (8th Cir. 1993). The extent of the discipline imposed in this case was the confiscation of Plaintiff's shoes. Based upon a review of the record in this case, there is no genuine issue of material fact that there is "some evidence" to support Defendants' decision that Plaintiff was in possession of athletic shoes that were not authorized by a current medical order, thereby violating SDSP's rules. (See Affidavit of Owen Spurrell, Doc. 68, Ex. A and B, "[a]bsent a contrary medical order, inmates are allowed only prison-issued shoes or shoes available for purchase in the commissary.") Thus, the taking of Plaintiff's shoes cannot be the basis for holding Defendants liable for retaliation.

The second claim of retaliation that remains is for denying a medical exam by Dr. Regier to obtain a renewal of his medical order to possess athletic shoes. In response to Plaintiff's request for Administrative Remedy regarding the taking of Plaintiff's shoes, Warden Weber responded: "[y]ou state the shoes ... were confiscated by senior staff on rounds in East Hall. You state you have been putting in request for Dr. Regier but with no success. The medical order for these shoes expired on October 4, 2002. Associate Warden Spurrell has decided that you have to get a renewal on the medical order or send the shoes out." (Doc. 71, Ex. A, bates no. 276.) There is no evidence that any of the named Defendants have denied Plaintiff access to the medical staff at the SDSP, or that they have specifically denied Plaintiff a medical exam by Dr. Regier. Accordingly, summary judgment will be entered in favor of Defendants on all of Plaintiff's retaliation claims.

10

IT IS ORDERED:

1. That the Clerk of Court shall file the Amended Complaint, attached to Plaintiff's Motion to Amend, Doc. 47, nunc pro tunc to June 15, 2004, when Magistrate Judge Simko granted Plaintiff's motion.

2. That Defendants' Motion for Summary Judgment, Doc. 63, is granted.

3. That the following claims, as alleged in the Amended Complaint, are dismissed without prejudice for failure to exhaust administrative remedies: a) those portion of the First, Second and Third Claims alleging retaliation for housing Plaintiff in a three-man cell and not assigning him to a bottom bunk; b) the Fourth Claim; and c) the Eighth Claim. The remainder of the claims, as alleged in the Amended Complaint are dismissed with prejudice.

Dated this 22nd day of August, 2005.

BY THE COURT:

Lawrence L. Piersol
Chief Judge

ATTEST:
JOSEPH HAAS, CLERK
By:_____, Deputy
(SEAL)

11